**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| JAMES H. HARRIS, CYNTHIA EPTING, and IRMA L. HERRIN, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>FEDERAL DEPOSIT INSURANCE CORP. as Receiver for COMMUNITY BANK & TRUST, CHARLES M. MILLER, WES DODD, JAN GARRISON, and RANDY JONES, :<br>:<br>Defendant. : | CIVIL ACTION NO.<br>2:10-CV-00231-RWS |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint [13]. After considering the record, the Court enters the following Order.

### **Background**

Community Bank & Trust ("Bank")–based out of Cornelia, Georgia with branches throughout northeast Georgia–was a banking corporation that existed from 1900 to 2010. (Dkt. No. [1] at ¶¶ 2, 11, 12, 43). One of the Bank's customers was Cleveland Motor Cars, Inc. ("CMC"), a business that established

banking accounts with the Bank soon after purchasing a General Motors car dealership (the "Dealership") in 1999. (Id. at ¶ 17). By 2004, CMC had approximately $4 million in outstanding loans with the bank and, by February 2008, had overdrawn its account by more than $1 million. (Id. at ¶¶ 19–20). Nevertheless, officers of the Bank—Defendants Wes Dodd ("Dodd"), Jan Garrison ("Garrison"), Randy Jones ("Jones), and Charles M. Miller ("Miller) (collectively, "the Bank Officers")—told CMC that the Bank would continue to fund CMC's business until the economy improved and CMC became profitable again. (Id. at ¶¶ 5–9, 21). However, the Bank and the Bank Officers asked CMC to raise capital from outside sources in September 2008, which led to the events at the center of this dispute. (Id. at ¶¶ 22, 39).

Plaintiffs James H. Harris ("Harris"), Cynthia Epting ("Epting"), and Irma L. Herrin ("Herrin") (collectively, "Plaintiffs") are friends, family, or business acquaintances of CMC representatives and employees. (Id. at ¶¶ 1, 23). CMC representatives approached Plaintiffs and proposed that they act as temporary borrowers on behalf of CMC in its relationship with the Bank. (Id. at ¶ 24). The Bank and the Bank Officers had approved a process whereby the proceeds from loans to Plaintiffs would be transferred to CMC's account with

2

the Bank rather than being paid to Plaintiffs. (Id. at ¶¶ 25, 39–41). The Bank said that these temporary loans were necessary so that the Bank could supply CMC with temporary operating capital, and it assured Plaintiffs that the loans would be consolidated into another loan that the Bank would subsequently make to CMC ("the Consolidated Loan"). (Id. at ¶ 26).

Each Plaintiff entered into a loan agreement: Harris entered into an agreement for $200,350.00 on January 23, 2009; Epting entered into an agreement for $125,745.00 on April 30, 2009; and Herrin entered into an agreement for $125,517.00 on May 15, 2009. (Id. at ¶¶ 27, 29, 31). Plaintiffs characterize these loans as "faulty." (Id. at ¶ 22). First, Plaintiffs say that the Bank deposited the money into CMC's account with the Bank rather than paying it to them. (Id.). Also, they allege that these loans were "signature loans," where the Bank "conducted little or no due diligence to determine [the Plaintiffs'] credit worthiness," and that no collateral was required.[1] (Id. at ¶¶ 28, 30, 32). As to Epting's loan, Plaintiffs say it was never signed by Epting. (Id. at

---

[1] As to Harris, Plaintiffs say the loan was clearly unsecured. (Id. at ¶ 28). As to Epting, Plaintiffs say that her Promissory Note erroneously indicates that collateral was required, and as to Herrin, Plaintiffs allege that Herrin lacked any interest in the list of vehicles that purported to secure the loan. (Id. at ¶¶ 30, 32).

3

¶ 30). Furthermore, Plaintiffs state that the Bank and the Bank Officers did not expect them to make any payments on the loans, whether for principal or interest. (Id. at ¶¶ 33, 41). They allege that they never made any payments on the loans (except for one limited circumstance), and that CMC made all payments to the Bank to service the loans. (Id.).

In accordance with the Bank's prior statements and understanding with Plaintiffs, CMC entered into agreements with the Bank to "roll up" all of CMC's loans with the Bank, including loans made to Plaintiffs, into the Consolidated Loan. The Consolidated Loan was: executed on September 9, 2009; approved by the Bank's Board of Directors or loan committee; noted on the minutes of the Board of Directors meetings; and maintained by the Bank afterward. (Id. at ¶¶ 34–35, 38). But, according to Plaintiffs, the Consolidated Loan was never "booked." (Id. at ¶ 42). The Consolidated Loan's purpose was to provide the Bank $11,148,173.00 to refinance prior and related indebtedness, including the loans to Plaintiffs and other temporary borrowers. (Id. at ¶ 36). In furtherance of the Consolidated Loan, Y&S Investments, LLC ("Y&S"), which held the land on which the Dealership was located ("the Property"), pledged the Property as collateral for the Consolidated Loan. (Id. at ¶ 37).

4

On January 29, 2010, the Commissioner of the Georgia Department of Banking and Finance closed the Bank and appointed Defendant FDIC as Receiver of the Bank. (Id. at ¶ 43). The FDIC has deemed the loans made to Plaintiffs to be due and payable. (Id. at ¶ 44).

In November 2010, Plaintiffs filed their Complaint [1] against the FDIC, the Bank, Dodd, Garrison, Jones, and Miller. The Complaint [1] alleges that the Bank and the Bank Officers owed and breached a number of duties to Plaintiffs in utilizing Plaintiffs as temporary borrowers in order to keep CMC financially viable. (Id. at ¶¶ 45–46). As such, the Complaint [1] claims Defendants are liable for negligence and breaching their duty of care (Id. at ¶¶ 47–54), fraud (Id. at ¶¶ 55–60), and negligent misrepresentation (Id. at ¶¶ 61–64). On December 20, 2010, Defendants Dodd, Garrison, and Miller filed a Motion to Dismiss Plaintiffs' Complaint [13].

## Discussion

### I.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual

allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

6

AO 72A
(Rev.8/82)

**II.    Merits of the Motion**

A.    Fraud

Defendants argue that Plaintiffs's fraud claim fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Dkt. No. [13-1] at 7–8). Specifically, "the Complaint [1] fails to identify a single specific statement or omission by Miller, Dodd, or Garrison which would support a claim for fraud, who made such a statement or when it was made." (Id. at 8).  The Court agrees that Plaintiffs' Complaint fails to meet the requirement of Rule 9(b) that fraud be alleged with particularity.  However, the Court will allow Plaintiffs an opportunity to file an amended complaint in an effort to plead fraud with particularity.  While the Complaint fails to do so, the Court, having examined the exhibits attached to Plaintiffs' Response to the Motion to Dismiss [28], finds that Plaintiffs may be able to assert a valid claim for fraud.[2]  Therefore, Defendants' Motion to Dismiss [13] is **DENIED without**

---

[2] To succeed on a claim for fraud,

> the plaintiff must show that the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a

7

**prejudice** as to Plaintiffs' claim for fraud.  Plaintiff shall have 30 days from the date of this Order to file an amended complaint re-alleging fraud with the particularity required by Rule 9(b).[3]  If Defendants believe that the amended complaint fails to satisfy the pleading requirements for fraud, they may renew their motion to dismiss as to this claim.

> B.     Negligence and Breach of Duty of Care

In support of their Motion to Dismiss [13], Defendants first argue that "[t]he Complaint fails to allege that Miller, Dodd, and Garrison owed Plaintiffs a valid duty of care in their capacity as borrowers that would support a claim for negligence or breach of the duty of care," and that the only duty to exercise operations with due care was owed to the corporation and its shareholders. (Dkt. No. [13-1] at 4–5).  Plaintiffs respond that they were not "borrowers," but rather "[a]ccording to the true nature of the banking relationship with Plaintiffs, the [Bank Officers] owed them a duty of due care."  (Dkt. [28] at 7).  More

---

> manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.

Perry v. Perry, 648 S.E.2d 193, 196 (Ga. Ct. App. 2007) (quoting Brown v. Techdata Corp., 234 S.E.2d 787, 790 (Ga. 1977)).

[3] Federal Rule of Civil Procedure 15(a)(2) directs the Court to freely give a party leave to amend a pleading when justice so requires.

specifically, Plaintiffs allege that "[t]he [Bank Officers] breached such duty by failing to consolidate Plaintiffs' 'loans' with the rest of CMC's debt" as they assured Plaintiffs they would do.  (Id.).

"It is well established that an action in negligence requires the breach of a duty owed to the claimant." McKenna Long & Aldridge, LLP v. Keller, 598 S.E.2d 892, 894 (Ga. Ct. App. 2004).  Plaintiffs have failed to identify the source of any duty that the Bank Officers had to Plaintiffs to consolidate their loans, such that a claim for negligence may legally be asserted against them. While the Bank Officers had no duty to consolidate the loans, Plaintiffs may be able to assert a claim for breach of contract.  Plaintiffs argue that as part of their agreement to enter into the loan agreements, the Officer Defendants agreed to later consolidate the agreements into one loan to CMC.  Plaintiffs argument is that the Officer Defendants failed to carry out their obligations under the agreement.  While this does not present a valid claim for negligence, Plaintiffs may be able to assert a claim for breach of contract and may attempt to do so in filing their amended complaint.  Defendants' Motion to Dismiss [13] as to Plaintiffs' claim for "Negligence and Breach of Duty of Care" is **GRANTED**.

9

### C. Negligent Misrepresentation

Defendants argue that insufficient facts were alleged to support the claim for negligent misrepresentation under Iqbal and Twombly. (Dkt. No. [13-1] at 8–9). Specifically, they say the Complaint [1] does not "identify what false statements were made, what information was omitted from those statements, or how Miller, Dodd, or Garrison were negligent in making them." (Id. at 9).

A claim for negligent misrepresentation does not carry the heightened pleading standard applicable to a claim for fraud.  To establish a claim for negligent misrepresentation, a plaintiff must prove "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Futch v. Lowndes Cnty., 676 S.E.2d 892, 896 (Ga. Ct. App. 2009) (quoting Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997)).  Plaintiffs allegations have satisfied the elements necessary to assert a claim for negligent misrepresentation.  Plaintiffs have alleged that Defendants: (1) asserted falsely that Plaintiffs would not be liable to the Bank for the loan agreements they entered into; (2) that they reasonably relied upon this assertion;

10

and (3) because the FDIC as Receiver now seeks repayment on the agreements they have suffered an economic injury as a result of their reliance.  Defendants' Motion to Dismiss [13] as to Plaintiffs' claim for negligent misrepresentation is **DENIED**.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss is **GRANTED in part**, **DENIED in part,** and **DENIED in part without prejudice–**it is **GRANTED** as to Plaintiffs' claim for negligence, it is **DENIED** as to Plaintiffs' claim for negligent misrepresentation, and is **DENIED without prejudice** as to Plaintiffs' claim for fraud.  Plaintiff shall file an amended complaint within 30 days of the date of this Order.

**SO ORDERED**, this  17th   day of August, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)