# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

JAMES H. HARRIS, CYNTHIA    :
EPTING, and IRMA L. HERRIN,    :
                           :
      Plaintiffs,    :
                           :    CIVIL ACTION NO.
      v.    :    2:10-CV-0231-RWS
                           :
FEDERAL DEPOSIT    :
INSURANCE CORPORATION,    :
as Receiver for Community Bank    :
& Trust, CHARLES M. MILLER,    :
WES DODD, JAN GARRISON,    :
and RODDY JONES,    :
                           :
      Defendants.    :

## ORDER

This case comes before the Court on Defendant Federal Deposit

Insurance Corporation, as Receiver for Community Bank & Trust's Motion to

Dismiss Plaintiffs' First Amended Complaint ("FDIC-R's Motion to Dismiss")

[50]; Defendants Charles M. Miller, Wes Dodd, and Jan Garrison's Motion to

Dismiss Plaintiffs' First Amended Complaint ("Individual Defendants' Motion

to Dismiss") [51]; Plaintiffs' Motion for Leave to File Surresponse in

Opposition to Defendant FDIC-R's Motion to Dismiss Plaintiffs' First

Amended Complaint [66]; and, finally, Plaintiffs' Motion for Leave to File

Surresponse in Opposition to [Individual] Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint [64]. After reviewing the record, the

Court enters the following Order.

**Background**[1]

Plaintiffs initiated this litigation to challenge the right of the Federal

Deposit Insurance Corporation ("FDIC") to collect on loans executed by

Plaintiffs in favor of a failed state bank, Community Bank & Trust ("CBT"),

for which FDIC is acting as receiver.[2] The loans at issue in this case arose out

of CBT's troubled banking relationship with Cleveland Motor Cars, Inc.

("CMC") of Cleveland, Georgia. (See generally Am. Compl., Dkt. [47].) The

history of this relationship is as follows. CMC established banking accounts

with CBT sometime in or shortly after 1999. (Id. ¶ 21.) By 2004, CMC had $4

---

[1] Because the case is before the Court on a motion to dismiss, the Court accepts as true the facts alleged in the First Amended Complaint ("Amended Complaint"). Cooper v. Pate, 378 U.S. 546, 546 (1964).

[2] In keeping with the parties' terminology, the Court hereinafter refers to Defendant FDIC, in this case acting as receiver, as "FDIC-R."

AO 72A
(Rev.8/82)

million in outstanding loans with CBT. Its bank accounts were constantly overdrawn, resulting in hundreds of dollars in overdraft fees on a daily basis. (<u>Id.</u> ¶ 22.) By February 2008, CMC's account was overdrawn by more than $1 million. (<u>Id.</u> ¶ 23.) Nonetheless, CBT continued to honor CMC's checks. (<u>Id.</u>)

In September 2008, CBT requested that CMC raise capital from outside sources. (<u>Id.</u> ¶ 26.) CBT proposed that CMC locate "temporary borrowers" to take out loans with CBT. Under this proposal, the proceeds of the loans would not be paid to the "temporary borrowers" but instead would be paid into CMC's accounts with CBT. (<u>Id.</u> ¶ 31.) To this end, CMC approached Plaintiffs–friends, family, and/or business acquaintances of CMC representatives or employees–and encouraged them to act as "temporary borrowers for and on behalf of CMC in its banking relationship with CBT." (<u>Id.</u> ¶¶ 29-30.) Plaintiffs and other "temporary borrowers" thus obtained loans from CBT (collectively the "temporary borrower loans"), which loans became part of a "modified floor-plan lending agreement" between CBT and CMC, designed to supply CMC with operating capital until other financing could be obtained. (<u>Id.</u> ¶¶ 27-28.)

3

As part of this modified floor-plan lending agreement, CBT "warranted" to both CMC and Plaintiffs that the temporary borrower loans were, in fact, only "temporary" and would be "'rolled up'" into a consolidated loan (the "consolidation loan") that CBT planned to extend to CMC in the future. (Id. ¶¶ 34, 49.) CBT also "promised that Plaintiffs would have no obligations to pay principal or interest on [their] loans." On the contrary, "CMC made all payments to CBT to service Plaintiffs' 'loans' because this was part of the modified floor-plan lending agreement between CMC and CBT." (Id. ¶¶ 34, 48.) In other words, CBT promised Plaintiffs that the loans would not be their responsibility and that upon completion of the consolidation loan, Plaintiffs would be released from future liability for the loans. (Id. ¶ 59.)

Finally, Plaintiffs allege that while the consolidation loan was "executed and approved by CBT's Board of Directors," it was not "'booked'" or "complete[d]." As a result of this "failure to complete (i.e., 'book') the consolidation loan," CBT failed to consolidate Plaintiffs' loans as promised. (Id. ¶ 56.) Thus, Plaintiffs have not been released from responsibility for the loans, and the FDIC–acting as receiver for CBT–has deemed the loans to be due and payable. (Id. ¶¶ 56, 60, 62.)

4

Based on the foregoing factual allegations, Plaintiffs filed the Amended Complaint, naming as Defendants FDIC-R and four officers of CBT–Charles M. Miller, Wes Dodd, Jan Garrison, and Randy Jones. The Amended Complaint alleges claims for breach of contract (Counts I and II), "fraud by silence or omission" (Count III), "fraud by affirmative conduct" (Count IV), and negligent misrepresentation (Count V). Plaintiffs also seek a declaratory judgment "that the consolidation loan is an obligation of CBT and that Plaintiffs are otherwise released from responsibility for [the temporary loans made to them] . . . " (Count VI) and an injunction "requiring that CBT book the consolidation loan and provide Plaintiffs the benefits of the same, or otherwise discharge Plaintiffs from any further obligations . . ." (Count VII). Finally, Plaintiffs seek attorney's fees (Count VII) and punitive damages (Count IX) based on Defendants' alleged bad faith and other like conduct.

Both FDIC-R and individual Defendants Miller, Dodd, and Garrison (collectively the "Individual Defendants") move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. [50], [51].) The Court considers these motions, in turn.

AO 72A
(Rev.8/82)

**Discussion**

**I.     FDIC-R's Motion to Dismiss Plaintiffs' First Amended Complaint [50]**

As stated in the Background section, <u>supra</u>, Plaintiffs raise the following claims for relief in the Amended Complaint: breach of contract (Counts I and II), "fraud by silence or omission" (Count III), "fraud by affirmative conduct" (Count IV), and negligent misrepresentation (Count V).  They seek a declaratory judgment (Count VI) and injunctive relief (Count VII) discharging Plaintiffs from liability under their loans.  Finally, Plaintiffs seek to recover attorney's fees (Count VII) and punitive damages (Count IX) based on alleged bad faith and other like conduct of Defendants.  The Court sets out the standard governing a Rule 12(b)(6) motion to dismiss before considering the merits of FDIC-R's motion with respect to each count of the Amended Complaint.

**A.     <u>Legal Standard</u>**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

6

(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  <u>Bryant v. Avado Brands. Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Iqbal</u>, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.

B.    <u>Analysis</u>

1.    *Breach of Contract (Counts I & II)*

In Count I, Plaintiffs raise a claim for breach of contract, alleging that

"they entered into a valid and enforceable oral contract with CBT whereby

Plaintiffs agreed to assist CBT, as temporary borrowers, in CBT's banking

relationship with CMC, by executing the 'loans' . . . ." (Am. Compl., Dkt. [47]

¶ 63.)  Plaintiffs allege that "CBT breached this contract with Plaintiffs by

failing to 'book' the consolidation loan or by otherwise failing to affirmatively

release Plaintiffs from any responsibility, liability or obligation for Plaintiffs'

'loans.'" (Id. ¶ 66.)  In Count II, Plaintiffs raise an alternative breach of

contract claim based on a third-party beneficiary theory, alleging that Plaintiffs

were intended third-party beneficiaries of the modified floor-plan lending

agreement between CBT and CMC and "the related agreement that all of

CMC's indebtedness would be rolled into the consolidation loan." (Id. ¶ 68.)

Plaintiffs allege that "[b]y failing to complete or, 'book' the consolidation loan,

CBT breached its agreements with CMC, and thereby breached its agreement

with Plaintiffs as third-party beneficiaries to such agreements with CMC." (Id.

¶ 72.)

        FDIC-R argues that Plaintiffs' claims for breach of contract fail as a

matter of law under the doctrine enunciated by the Supreme Court in D'Oench,

Duhme & Company v. FDIC, 315 U.S. 447 (1942) (the "D'Oench doctrine")

and embodied in 12 U.S.C. § 1823(e). In D'Oench, the FDIC brought suit to collect on a promissory note acquired in a purchase and assumption transaction. 315 U.S. at 455-56. The maker of the note asserted as a defense failure of consideration, arguing that the failed bank had orally promised the maker that it would not seek to collect the debt. Id. at 456. The Supreme Court rejected this defense, holding that "a 'secret agreement' outside the documents contained in the bank's records would not operate as a defense against suit by the FDIC on a note acquired from a failed bank." Resolution Trust Co. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995) (quoting D'Oench, 315 U.S. at 459). Thus, under the D'Oench doctrine, the FDIC may assert the defense of estoppel "to bar a party's claim based on an alleged agreement which does not appear in the bank's records." Victor Hotel Corp. v. FCA Mortgage Corp., 928 F.3d 1077, 1081 (11th Cir. 1991).

The Supreme Court in D'Oench explained the rationale of this rule as follows:

> . . . [T]he reach of the rule which prevents an accommodation maker of a note from setting up the defense of no consideration against a bank or its receiver or creditors is not delimited to those instances where he has committed a statutory offense. . . . An accommodation maker is not allowed that defense as against the receiver of the bank . . . where his act contravenes a general policy

9

to protect the institution of banking from such secret agreements. In some of those cases the accommodation maker was party to the scheme of deception in the sense that he had full knowledge of the intended use of the paper. . . . In others he had no positive idea of committing any fraud upon anyone. . . . Yet he has not been allowed to escape liability on the note as against the receiver even though he was very ignorant and ill-informed of the character of the transaction. . . . The defendant may not have intended to deceive any person, but, when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that, for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. *Public policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.*

315 U.S. at 458-459 (internal quotation marks and citations omitted) (emphasis added).

The D'Oench doctrine has been codified at 12 U.S.C. § 1823(e), which provides,

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement–

(A) *is in a writing,*

(B) was executed by the depository institution and any person claiming an adverse interest thereunder,

10

including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C)     was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D)     has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (emphasis added). Thus, under D'Oench and section 1823(e), "a debtor [may not] avoid liability to the FDIC on a debt instrument from an insolvent bank by claiming an unrecorded side agreement that discharges any obligation to pay the debt." Vernon, 907 F.2d at 1105.

In this case, FDIC-R argues that Plaintiffs are attempting to do exactly what the D'Oench doctrine and section 1823(e) prohibit–avoid liability under promissory notes based on an unwritten and unrecorded side agreement that the notes would not be collected. (Mem. of Law in Supp. of FDIC-R's Mot. to Dismiss ("FDIC-R's Mem."), Dkt. [50-1] at 5-6, 10-15.) FDIC-R points to Plaintiffs' allegations that they executed loans in favor of CBT "in conjunction with what they admit was, at best, an oral agreement among [Plaintiffs], CMC, and [CBT] to release them of liability under their Notes when a future loan was

11

made to CMC." (Id. at 10 (citing Am. Compl., Dkt. [47] ¶ 63) (emphasis in original).)

Plaintiffs do not dispute the meaning or applicability of the D'Oenche doctrine or section 1823(e). On the contrary, Plaintiffs argue that 'the parties' obligations under the modified floor plan lending agreement' were sufficiently memorialized in writings to satisfy those provisions. (Pls.' Opp'n to FDIC-R's Mot. to Dismiss ("Pls.' Opp'n"), Dkt. [54] at 1-10.) To this end, Plaintiffs allege in the Amended Complaint that the "agreement as to the consolidation loan is memorialized, inter alia, by the Promissory Note executed on September 9, 2009, a copy of which is attached to the original Complaint as Exhibit 'D'." (Dkt. [47] ¶ 50.) Plaintiffs further allege that "[t]he agreement between CMC, CBT, and Plaintiffs . . . that their 'loans' would be rolled into the consolidation loan with CMC was in writing, . . . [f]or example, . . . memorialized by documents like the 'Request for Approval for Consolidation of Debt,' which was . . . approved by CBT's Board of Directors, and is attached hereto as Exhibit 'H'." (Id. ¶ 54.) (See also Pls.' Opp'n, Dkt. [54] at 7 ("The agreement to consolidate the 'loans' also is included in the Bank's records, some of which

AO 72A
(Rev.8/82)

documents have been uncovered, despite only limited discovery to date.")
(citing Am. Compl., Exs. G, H).)

Contrary to Plaintiffs' arguments, the Court finds that the alleged terms of Plaintiffs' loans–i.e., the temporary nature of the loans, Plaintiffs' lack of liability thereunder, and CBT's purported obligation to "roll up" the loans into a consolidation loan–are not memorialized in a writing so as to satisfy <u>D'Oench</u> and section 1823(e). As a threshold matter, Plaintiffs plainly allege in their breach of contract count that they "entered into a valid and enforceable *oral* contract with CBT whereby Plaintiffs agreed to assist CBT, as temporary borrowers, in CBT's banking relationship with CMC, by executing the 'loans' . . . ." (Am. Compl., Dkt. [47] ¶ 63 (emphasis added).) Consistent with this allegation, the promissory notes themselves do not, on their face, carry any of the terms that Plaintiffs allege. (<u>See</u> Compl., Exs. A-C (Pls.' Promissory Notes), Dkt. [1-2], [1-3], & [1-4] (incorporated by reference in Plaintiffs' Amended Complaint).)

Furthermore, the Court has reviewed the additional documents that Plaintiffs cite as memorializing the terms of the modified floor-plan lending agreement. None, however, states that the loans were merely temporary or that

13

Plaintiffs were not obligated to make payments thereunder. Nor does any document memorialize CBT's alleged agreement to consolidate the loans and discharge Plaintiffs from future liability.

The document that perhaps most supports Plaintiffs' contention that CBT agreed to consolidate their debts, thereby discharging Plaintiffs from liability, is the "Request for Approval for Consolidation of Debt to Classified Borrower," attached to Plaintiffs' Amended Complaint as Exhibit "H." (Dkt. [47-3].) This document appears to list each of Plaintiffs' loans as debts that were requested to be consolidated, and it appears to have been signed by multiple members of CBT's Board of Directors. (Id. at 2 of 4.) The document, however, is not a consolidation agreement; it is merely a "request" that certain debts be consolidated. And as Plaintiffs repeatedly allege throughout the Amended Complaint, the consolidation loan that CBT allegedly promised to make never was "booked" or, as Plaintiffs define that term, "completed." Plaintiffs thus allege that the consolidation loan was not made and does not exist. Accordingly, there is no document memorializing CBT's agreement to consolidate Plaintiffs' loans and discharge them from liability.[3]

---

[3] Despite their arguments to the contrary, Plaintiffs themselves appear to recognize that the alleged terms of their loans were not memorialized in a writing. For

14

In accordance with the foregoing, the Court agrees with FDIC-R and finds that Plaintiffs' breach of contract claims fail as a matter of law because the claims are predicated on alleged agreements that are not memorialized in a writing, which agreements, under section 1823(e) and D'Oench, cannot sustain a cause of action against the FDIC.[4]

example, Plaintiffs state, "The agreements in the present case are memorialized in the Bank's records, which were in no way hidden from FDIC, *even though such writings do not contain all terms of such agreements. Indeed, given the improper nature of the modified floor-plan lending agreement, the Bank's records are not likely to contain every specific detail."* (Pls.' Opp'n, Dkt. [54] at 8 (emphasis added).) Plaintiffs further concede, *"While it may be true that 'nothing contained in the Notes [themselves] would alert any Bank examiner that the Notes were temporary'* . . . this is not the standard. There is no requirement that the FDIC was to view such Notes in a vacuum, devoid of context supplied by other documents." (Id. at 9 (quoting FDIC-R's Mem., Dkt. [50-1] at 6 n.4) (alterations in original) (emphasis added).)

Plaintiffs' argument is incorrect and proves to the contrary: D'Oench and section 1823(e) require that any condition to payment of a note be memorialized in a written agreement contained in a bank's records. Langley v. FDIC, 484 U.S. 86, 96 (1987); see also Vernon, 907 F.2d at 1105 ("Under section 1823(e), the courts have protected the FDIC from secret non-payment agreements . . . ."). This requirement protects the FDIC from having to scour a bank's records to piece together the terms of a given transaction from what could be hundreds or thousands of documents. See, e.g., Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1579 (10th Cir. 1993) ("Scattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute. The purpose of the doctrine is certainty and an inference of an alleged agreement does not meet the requirements of § 1823(e).") (internal quotation marks and citation omitted). In light of Plaintiffs' concession that the writings they identify do not contain each term of the alleged agreement, the writings do not satisfy D'Oench or section 1823(e).

[4] The Court notes Plaintiffs' allegation "that CBT was improperly using Plaintiffs' loans to make CMC appear more financially healthy to Federal banking

15

> 2.   *Fraud by Silence or Omission (Count III), Fraud by*
> *Affirmative Conduct (Count IV), and Negligent*
> *Misrepresentation (Count V)*

In Counts III, IV, and V, Plaintiffs raise claims for "fraud by silence or omission" (i.e., fraudulent non-disclosure), "fraud by affirmative conduct" (i.e., fraudulent misrepresentation), and negligent misrepresentation, respectively. In support of their claim for fraudulent non-disclosure (Count III), Plaintiffs allege:

> [Defendants] intentionally failed to inform . . . Plaintiffs of the following: (a) that Plaintiffs' 'loans' were being used to further the modified floor-plan lending agreement between CBT and CMC; (b) that if the consolidation loan was not made to CMC, Plaintiffs would be responsible for payment of principal and interest on the loan; (c) that Plaintiffs could potentially be treated as actual borrowers even though they borrowed nothing; (d) that Plaintiffs' loans were not proper and would not stand the scrutiny of Federal banking regulators; (e) that Plaintiffs' loans were contrary to CBT's internal lending practices; and, (f) that CBT was improperly using Plaintiffs' loans to make CMC appear more financially healthy to Federal banking regulators.

(Am. Compl., Dkt. [47] ¶ 75.)  Plaintiffs further allege that if CBT had

---

regulators." (Am. Compl., Dkt. [47] ¶ 75.)  This allegation demonstrates that this is precisely the type of case that <u>D'Oench</u> and section 1823(e) are intended to prohibit. <u>See</u> <u>Langley</u>, 484 U.S. at 91 ("One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. . . .  Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.").

16

informed Plaintiffs of any of the matters stated above at the time the loans were made, Plaintiffs would not have executed the loan documents. (Id. ¶ 76.)

In support of their claim for fraudulent misrepresentation (Count IV), Plaintiffs allege:

> [Defendants] . . . intentionally misrepresented to Plaintiffs the following material facts on the date that Plaintiffs executed their 'loan' documents: (a) Plaintiffs' loans would only be temporary; (b) Plaintiffs would have absolutely no obligations to pay any principal or interest on such loans made by CBT on CMC's behalf; and, (c) the loans made to Plaintiffs would be rolled into a consolidation loan that CBT would be completing in favor of CMC, or would otherwise affirmatively release Plaintiffs from responsibility for the loans.

(Id. ¶ 82.)[5] Finally, Plaintiffs allege that Defendants are liable for negligent misrepresentation (Count V) based on the same conduct alleged in support of Plaintiffs' claims for fraud. (Id. ¶ 88.)

FDIC-R moves to dismiss these claims on the same ground on which it seeks dismissal of Plaintiffs' breach of contract claims, namely, that the claims

---

[5] As FDIC-R contends (FDIC-R's Mem., Dkt. [50-1] at 15, 17), the type of fraud alleged in these two counts is "fraudulent inducement" as opposed to "fraud in the factum." The distinction has been explained as follows: "One asserting the defense of . . . fraud in the inducement attacks the agreements underlying a contract, not the validity of the contract itself. In contrast, fraud in the factum exists when there is a substitution of instruments unknown to the maker." FDIC v. Willis, 497 F. Supp. 272, 280 (S.D. Ga. 1980).

AO 72A
(Rev.8/82)

for fraud and negligent misrepresentation rely on undocumented representations and thus are barred by section 1823(e).  (FDIC-R's Mem., Dkt. [50-1] at 15-18.)  The Court agrees.

With respect to Plaintiffs' claim for fraudulent misrepresentation (Count IV), the Court in <u>Langley</u> plainly held that claims for fraudulent inducement based on affirmative misrepresentations are barred under section 1823(e).  484 U.S. at 93.  <u>See also</u> <u>Vernon</u>, 907 F.2d at 1105-06 ("Under section 1823(e), the courts have protected the FDIC from . . .–perhaps most significantly–claims that the creation of the debt was fraudulently induced by the bank.") (citations omitted); <u>Victor Hotel</u>, 928 F.2d at 1082 ("Both <u>D'Oench</u> and <u>Langley</u> have been applied to immunize the FSLIC against defenses such as fraudulent inducement and misrepresentation.").  In other words, a debtor cannot avoid liability to the FDIC under a debt instrument based on an allegation that she was induced to execute it by a fraudulent misrepresentation, where the misrepresentation is not memorialized in a writing in accordance with section 1823(e).  Count IV accordingly fails, as does Count V, which alleges negligence based on the same unwritten, affirmative misrepresentations.

18

FDIC-R also contends that the claim for fraudulent non-disclosure set out in Count III is subject to dismissal for the same reasons. (FDIC-R's Mem., Dkt. [50-1] at 17-18.) The Court agrees and finds that the <u>Langley</u> rule applies with equal force to claims of fraudulent inducement based on omissions or non-disclosure as to claims based on affirmative misrepresentations.

Like Plaintiffs' claim for fraudulent misrepresentation, Plaintiffs' claim for fraudulent non-disclosure challenges the truthfulness of CBT's unwritten, affirmative representations to Plaintiffs–<u>i.e.</u>, that Plaintiffs' loans would be temporary, that Plaintiffs would not be obligated to make payments thereunder, and that the loans would be rolled up into a consolidation loan, thereby discharging Plaintiffs' from future liability. Plaintiffs' claim is essentially that Defendants failed to disclose material facts that would have refuted, in whole or in part, the truthfulness of those affirmative representations. Because the representations were not recorded in a writing, the claim for fraudulent non-disclosure predicated upon them is barred under section 1823(e). <u>See, e.g.</u>, <u>McCullough v. FDIC</u>, 987 F.2d 870, 872-73 (1st Cir. 1993) (finding section 1823(e) to bar claims for fraudulent non-disclosure and noting that "permitting suit on omissions would practically swallow the <u>Langley</u> rule since parties can

AO 72A
(Rev.8/82)

generally turn an affirmative misrepresentation into an omission by means of artful pleading") (internal quotation marks and citations omitted); <u>RTC v. Ehrenhaus,</u> 34 F.3d 441, 442 (7th Cir. 1994) (noting that section 1823(e) bars fraud claims based on omissions and that "[a] contrary result would produce the incomprehensible anomaly that borrowers had greater remedies against non-disclosure of material facts than outright lies"). Count III accordingly fails."[6]

---

[6] Plaintiffs do not dispute FDIC-R's argument that <u>D'Oench</u> and section 1823(e) bar claims for fraudulent inducement, whether based on affirmative misrepresentations or non-disclosure of material facts. Instead, they seek to avoid dismissal of their Count III and IV fraud claims by arguing that they have alleged fraud *in the factum,* not fraudulent inducement. (Pls.'Opp'n, Dkt. [54] at 10-12 (emphasis added).) This argument fails. Fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." <u>Langley</u>, 484 U.S. at 93. In this case, Plaintiffs plainly knew they were executing loans. Because they do not allege that they were misled as to the nature of the documents as loans, they have not alleged a claim for fraud in the factum.

Finally, Plaintiffs seek to avoid dismissal of their claims for fraud and negligent misrepresentation by arguing that these claims fall within the "free standing tort exception" to the <u>D'Oench</u> doctrine. (Pls.' Opp'n, Dkt. [54] at 12-14.) The Eleventh Circuit Court of Appeals indeed has recognized this exception, according to which the <u>D'Oench</u> doctrine will not bar a *"free standing tort claim,* which is unrelated to a specific asset acquired by the FDIC" or "unrelated to regular banking transactions." <u>OPS Shopping Center, Inc. v. FDIC</u>, 992 F.2d 306, 310 (11th Cir. 1993) (emphasis in original). For example, a bank's alleged violation of securities laws, discrimination in employment, or claims related to an automobile accident occurring within the scope of a bank employee's employment would constitute "free standing torts" exempt from the <u>D'Oench</u> doctrine. <u>Id.</u>

Contrary to Plaintiffs' argument, the Amended Complaint does not allege "free standing torts" exempt from the <u>D'Oench</u> doctrine. The common thread among the "free standing tort claims" listed above is that none of the claims "implicate[s] the

### 3. Equitable Relief (Counts VI and VII)

Finally, Plaintiffs seek a declaratory judgment that they are not liable for the loans executed in favor of CBT (Count VI) and an injunction "requiring that CBT book the consolidation loan . . . or otherwise discharge Plaintiffs from any further obligations . . ." (Count VII). In light of the Court's rulings above, finding that Plaintiffs' claims fail as a matter of law, Plaintiffs are not entitled to such relief. The Court also notes, as FDIC-R argues, that these claims are barred by 12 U.S.C. § 1821(j), which provides, ". . . [N]o court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation [FDIC] as . . . a receiver." Enjoining FDIC from collecting Plaintiffs' notes, or otherwise discharging Plaintiffs from liability thereunder, certainly would "restrain" the FDIC's powers as receiver in this case, in violation of section 1821(j). Accordingly, Counts VIII and IX are due to be dismissed.

---

records of regular banking transactions." Id. By contrast, the exception does not apply to claims that "relate directly to ordinary banking transactions." Id. Plaintiffs' claims in this case plainly fall within the latter category: they stem from and relate directly to loan agreements with CBT, which agreements plainly constitute "ordinary banking transactions." The free standing tort exception thus does not apply to shield Plaintiffs' claims for fraud or negligent misrepresentation from the D'Oench bar.

### 4. Attorney's Fees (Count VIII) and Punitive Damages (Count IX)

In light of the Court's rulings above finding that Plaintiffs have failed to state a claim against FDIC-R, there is no basis on which Plaintiffs could recover attorney's fees or punitive damages against this Defendant. Counts VIII and IX therefore are due to be dismissed.

### C. Conclusion

In sum, the Court finds that Plaintiffs' claims against FDIC-R fail as a matter of law. FDIC-R's Motion to Dismiss the Amended Complaint [50] therefore is **GRANTED** in its entirety.

## II. Plaintiffs' Motion for Leave to File Surresponse in Opposition to FDIC-R's Motion to Dismiss Plaintiffs' First Amended Complaint ("Pls.' Mot. to File Surreply to FDIC-R's Mot. to Dismiss") [66]

Plaintiffs move to file a surreply to Defendant FDIC-R's Motion to Dismiss on the basis of newly-discovered documents, which Plaintiffs contend memorialize the agreements they have alleged and satisfy the D'Oench rule. (See generally Pls.' Mot. to File Surreply to FDIC-R's Mot. to Dismiss, Dkt. [66].) "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies." Fedrick v. Mercedes-Benz USA,

AO 72A
(Rev.8/82)

LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (citing Byrom v. Delta Family Care-Disability & Survivorship Plan, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004)). "To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." Garrison v. N.E. Ga. Med. Ctr., Inc., 66 F. Supp. 2d 1336,1340 (N.D. Ga. 1999). Rather, surreplies typically will be permitted only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review. Cf., e.g., Fedrick, 366 F. Supp. 2d at 1197 (stating "valid reason for . . . additional briefing exists . . . where the movant raises new arguments in its reply brief").

The Court finds that the circumstances of this case do not warrant the filing of a surreply. Defendant FDIC-R did not raise any new arguments in its reply brief, nor does Plaintiffs' proposed Surreply seek to inform the Court of a new decision or rule of law that bears on the issues before it. Furthermore, the Court has reviewed the allegedly newly-discovered documentation, which Plaintiffs contend memorialize the agreements they allege. The Court finds, however, that they do not. Plaintiffs' proposed Surreply thus does not alter the

Court's conclusion that the agreements Plaintiffs allege cannot support a cause of action against FDIC-R under D'Oench and section 1823(e). Accordingly, Plaintiffs' Motion for Leave to File a Surreply in Opposition to Defendant FDIC-R's Motion to Dismiss Plaintiffs' First Amended Complaint [66] is **DENIED**.

### III. Defendants Charles M. Miller, Wes Dodd, and Jan Garrison's Motion to Dismiss Plaintiffs' First Amended Complaint ("Individual Defendants' Motion to Dismiss") **[51]**

Like FDIC-R, the Individual Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). As a threshold matter, the Individual Defendants address only Plaintiffs' claims for fraud and negligent misrepresentation. (See generally Mem. in Supp. of Individual Defs.' Mot. to Dismiss ("Individual Defs.' Mem."), Dkt. [51-1].) They contend, "Because Counts I and II concern the alleged breach of contract between Plaintiffs and CBT and are not directed to Defendants, they take no position as to whether these Counts state a claim under [Rule] 12(b)(6). Similarly, Defendants do not take a position with respect to the declaratory judgment in Count VI because the FDIC is the only party with any interest in that claim." (Id. at 10 n.6.) In their brief in

opposition, Plaintiffs do not dispute this characterization of the claims in the Amended Complaint. (<u>See generally</u> Dkt. [55].) Accordingly, the Court considers the Amended Complaint as raising claims against the Individual Defendants only for fraud and negligent misrepresentation (in Counts III, IV, and V).

With respect to these claims, the Individual Defendants first argue that Plaintiffs claims' for fraud fail to satisfy the pleading requirements of Rule 9(b) and therefore are due to be dismissed. They further argue that Plaintiffs' negligent misrepresentation claim fails as a matter of law because it arises out of an "illegal contract"–<u>i.e.</u>, Plaintiffs' agreement "to act as 'straw borrowers' in a scheme to channel money to CMC." (Individual Defs.' Mem., Dkt. [51-1] at 10.) Utilizing the legal standard set out in Part I.A., <u>supra</u>, the Court considers these arguments and whether Plaintiffs have stated a claim against the Individual Defendants.

A.    <u>Fraud by Silence or Omission (Count III) and Fraud by Affirmative Conduct (Count IV)</u>

Under Georgia law, a claim for fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable

25

reliance; and (5) damages." Home Depot of U.S.A., Inc. v. Wabash Nat'l

Corp., 724 S.E.2d 53, 60 (Ga. Ct. App. 2012) (internal quotation marks and

citation omitted). Furthermore, under Rule 9(b) of the Federal Rules of Civil

Procedure, a party alleging fraud must "state *with particularity* the

circumstances constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). The

Eleventh Circuit has interpreted this Rule as follows:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what
> statements were made in what documents or oral representations
> or what omissions were made, and (2) the time and place of each
> such statement and the person responsible for making (or, in the
> case of omissions, not making) same, and (3) the content of such
> statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud."

Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007).

The Individual Defendants argue that Plaintiffs' claims for fraud fail to

satisfy the heightened pleading standard of Rule 9(b) because the allegations in

the Amended Complaint "improperly lump the Individual Defendants together

for purposes of alleging who is responsible for the alleged misstatements."

(Individual Defs.' Mem., Dkt. [51-1] at 7.) They further contend that

Plaintiffs' "'either or' approach to pleading a fraud claim" fails to satisfy the

Rule (id. at 8), pointing to Plaintiffs' allegation that "'CBT and the other

26

Officer Defendants, **either directly or through CMC's representatives,** intentionally misrepresented to Plaintiffs the . . . material facts [described in the Amended Complaint] . . . .'" (<u>Id.</u> (emphasis in original) (quoting Am. Compl., Dkt. [47] ¶ 82).)

With respect to Plaintiffs' claim for "fraud by affirmative conduct" (<u>i.e.</u>, fraudulent misrepresentation) (Count IV), the Court agrees with the Individual Defendants that Plaintiffs have failed to plead the "who" of the fraud with the particularity required by Rule 9(b). Specifically, Plaintiffs have failed to distinguish between the Individual Defendants and allege particular misrepresentations on the part of each Defendant, individually. This is required to satisfy Rule 9(b). Despite the Court having granted Plaintiffs leave to amend their original Complaint to plead fraud with the particularly required by Rule 9(b) (Order, Dkt. [44] at 7-8), Plaintiffs have failed to do so with respect to Count IV. This claim, therefore, is due to be dismissed.

With respect to Plaintiffs' claim for "fraud by silence or omissions" (<u>i.e.</u>, fraudulent non-disclosure) (Count III), however, the Court finds that Rule 9(b) is satisfied. Plaintiffs again have "lumped" the Individual Defendants together for purposes of alleging the "who" of the fraud, as they allege that "the Officer

Defendants" intentionally failed to inform Plaintiffs of several material facts regarding Plaintiffs' loans. (Am. Compl., Dkt. [47] ¶¶ 74-81.) While this allegation is insufficient to plead, with particularity, a claim for fraudulent misrepresentation, it is sufficient to state a claim for fraudulent non-disclosure; Plaintiffs could not allege with any greater specificity that the Individual Defendants *did not* disclose certain material facts. Plaintiffs' claim for fraudulent non-disclosure set out in Count III accordingly survives the Individual Defendants' Motion to Dismiss.

B. Negligent Misrepresentation (Count V)

To state a claim for negligent misrepresentation under Georgia law, a claimant must properly allege the following essential elements: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Home Depot, 724 S.E.2d at 60. As stated above, the Individual Defendants argue that Plaintiffs' claim for negligent misrepresentation fails as a matter of law because the claim "aris[es] out of an illegal contract . . . ." (Individual Defs.' Mem., Dkt. [51-1] at 9.) In support of this argument, the

Individual Defendants point to a District of Connecticut decision (id.), which rejected a claim for negligent misrepresentation, finding that the claim was "in essence a claim that [the defendant] failed to comply with the terms of an illegal contract . . . ." Lawrence v. Richman Grp. of Conn., LLC, 407 F. Supp. 2d. 385, 392 (D. Conn. 2005).

The Court finds this argument to be of no avail. As a threshold matter, the court in Lawrence found that the plaintiff had "fail[ed] to plead justifiable reliance" and falsity–two essential elements of a claim for negligent misrepresentation under Connecticut law. Id. at 391-92. In light of this failure, the court concluded that the plaintiffs claim for negligent misrepresentation was "*thus* in essence" a claim that the defendant failed to comply with the terms of a contract that previously had been found to be "illegal." Id. at 392 (emphasis added). The court then rejected the claim as a matter of law, reasoning as follows:

> Plaintiffs negligent misrepresentation claim clearly is one 'springing' from the alleged, and unenforceable, contract between plaintiff and defendant as the claim arises from the same alleged misrepresentations that form the basis of the alleged contract and stem from the same alleged noncompliance with those representations. Plaintiff cannot be permitted to circumvent the illegality of the contract by asserting what is essentially his breach of contract claim under the label of misrepresentation.

Id. at 392.

In this case, however, unlike in Lawrence, Plaintiffs have plead each of the essential elements of a claim for negligent misrepresentation. Plaintiffs allege that the Individual Defendants negligently supplied Plaintiffs with false information regarding their loans (i.e., that the loans were temporary, that Plaintiffs had no liability thereunder, and that the loans would be "rolled up" into a future consolidation loan to CMC), upon which Plaintiffs reasonably relied, to their detriment, in executing the loans. (Am. Compl., Dkt. [47] ¶¶ 88-90.) Plaintiffs thus have alleged a plausible claim for negligent misrepresentation–which is all they are required to do at the motion to dismiss stage of the litigation.

Furthermore, the Individual Defendants have failed to show that Plaintiffs' negligent misrepresentation claim stems from an "illegal contract" as the claim did in Lawrence. The Individual Defendants argue that Plaintiffs' loan agreements are illegal in light of 18 U.S.C. § 1014, which prohibits, among other things, the knowing making of false statements "for the purpose of influencing in any way . . . any institution the accounts of which are insured by the [FDIC] . . . ." They have failed to show, however, how the loan agreements

30

alleged in this case run afoul of this provision. Accordingly, the Individual

Defendants, have failed to show that the claim for negligent misrepresentation

is barred as a matter of law.

C.    Conclusion

In sum, the Court finds that Plaintiffs have failed to state a claim for

fraudulent misrepresentation (Count IV) but have stated plausible claims for

fraudulent non-disclosure (Count III) and negligent misrepresentation (Count

V). Accordingly, the Individual Defendants' Motion to Dismiss is **GRANTED**

as to Count IV but **DENIED** as to Counts III and V.

**IV.    Plaintiffs' Motion for Leave to File Surresponse in Opposition to
         Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint**
         ("Plaintiffs' Mot. to File Surreply to Individual Defs.' Mot. to Dismiss")
         **[64]**

Plaintiffs seek leave of Court to a file a surreply in opposition to the

Individual Defendants' Motion to Dismiss, arguing that a surreply is warranted

to show the Court newly-discovered documentary evidence of the Individual

Defendants' involvement in the events alleged in the Amended Complaint.

(See generally Pls.' Mot. to File Surreply to Individual Defs.' Mot. to Dismiss,

Dkt. [64].) Utilizing the legal standard set out in Part II., supra, the Court has

considered Plaintiffs' motion and finds it due to be DENIED. At the motion to

dismiss stage of the litigation, the Court is to consider only the allegations of the Amended Complaint and any exhibits attached thereto. <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1232 (11th Cir. 2000). Accordingly, the documentary evidence Plaintiffs seek to produce to the Court by way of surreply is not properly subject to the Court's review. Plaintiffs' Motion to File Surreply to the Individual Defendants' Motion to Dismiss [64] therefore is **DENIED**.

### Conclusion

In accordance with the foregoing, Defendant Federal Deposit Insurance Corporation, as Receiver for Community Bank & Trust's Motion to Dismiss Plaintiffs' First Amended Complaint [50] is **GRANTED**. Plaintiffs' Motion for Leave to File Surresponse in Opposition to Defendant FDIC-R's Motion to Dismiss Plaintiffs' First Amended Complaint [66] is **DENIED**. Defendant Charles M. Miller, Wes Dodd, and Jan Garrison's Motion to Dismiss Plaintiffs' First Amended Complaint [51] is **GRANTED in part and DENIED in part**. It is **GRANTED** with respect to the claim for "fraud by affirmative conduct" set out in Count IV, but **DENIED** with respect to the claim for "fraud by silence or omissions" set out in Count III and the claim for negligent

AO 72A
(Rev.8/82)

misrepresentation set out in Count V.  Finally, Plaintiffs' Motion for Leave to

File Surresponse in Opposition to Defendants' Motion to Dismiss Plaintiffs'

First Amended Complaint [64] is **DENIED**.

      **SO ORDERED**, this  1st  day of August, 2012.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)